DECISION
Plaintiff appeals Defendant's omitted property notice, dated June 2, 2009, adding the real market value of land identified as R364493 1S213AD-00400 (subject property) to the 2008-09 tax roll.
A trial was held in the Oregon Tax courtroom, Salem, Oregon, on March 1, 2010. David W. Pump (Pump), Plaintiffs designated representative, appeared and testified on behalf of Plaintiff. Chris Gilmore, Senior Assistant County Counsel, Washington County, appeared on behalf of Defendant. Betty O'Rourke (O'Rourke), Senior Administrative Exemption Specialist, Washington County Department of Taxation and Assessment, and Chris Werner (Werner), certified property appraiser, Washington County Department of Taxation and Assessment, testified on behalf of Defendant.
Plaintiffs Exhibits 1 and 2 and Defendant's Exhibits A-1, B-1, D-1 to D-5, E-1, F-1, G-1, I-1, J-1, P-1, P-2, Q-1, and Q-2, were offered and received without objection.
 I. STATEMENT OF FACTS
O'Rourke testified that on December 3, 1996, Plaintiff received property tax exemption approval for the subject property. The subject property's use was described as an improved structure used as an administrative office that was located on one of three adjoining tax lots *Page 2 
providing "services to adults with serious and persistent mental illness." (Def's Ex A-1.) O'Rourke testified that the subject property met the statutory requirements of ORS 307.130 for exemption. Pump testified that on July 9, 2006, the structure housing the administrative office was destroyed by fire.
On April 27, 2007, the county granted a permit to demolish the structure. (Def's Ex D-5.) Pump testified that after the structure was demolished there was a hole where the basement had been; that hole was filled with asphalt "plowed" from the driveway. Pump testified that the only structure on the subject property is a shed, measuring approximately 250 square feet, with a locking door that is being used to store mattresses and client goods. O'Rourke testified that the county is willing to grant an exemption for the shed which has never been on the tax roll and for the land underneath the shed.
Pump testified that after the fire Plaintiff "set about to rebuild" the administrative building in fulfillment of "its mission of providing housing for the mentally ill." He testified that "there were many initial delays in our efforts caused by the insurance adjusters;" it "has taken some time to get funding [approximately $6.8 million] in place," and Plaintiff plans to "break ground in July 2010." (Ptf's Ex 1; Def's Ex I-1.) A detailed list of expenditures beginning July 10, 2007 (approximately one year after the fire), was briefly discussed by Pump. (Ptf's Ex 2.) Pump testified that Plaintiff has been working continuously to restore active use but it has encountered county planning requirements that included three public hearings to allow the neighbors to express concerns. He was pleased to report that as of the last hearing there is no negative opposition to Plaintiff building a two story 14,500 square foot office and a three story low-income 15 unit housing structure, measuring approximately 12,000 square feet. *Page 3 
Pump testified that it is Plaintiff's "position that the use for which an exemption was granted in 1996 has never ceased. It has been inactive due to the unforeseen fire and loss of the building and we have been diligent in re-establishing the active use." (Ptf's Ex 1.) Pump testified that Plaintiff is "re-establishing the active use." (Id.) He went on to state that the "Assessor has ruled that some of our continuing activities on the property; parking, storage, and recreation, are insufficient and not the specific original exempted use. It is the best actual use of the property we can make while working to return to the original specific use." (Id.)
O'Rourke testified that the county did not know that the building was destroyed until March 12, 2009. (Def's Ex E-1.) On April 27, 2009, Defendant issued a Notice of Intent (Notice), stating that "[w]hen the building was demolished, the property was't (sic) used for charitable purposes and was not exempt from taxation." (Def's F-1.) The Notice stated that the real market value of the land ($260,080) remained unchanged and the assessed value increased from zero to $137,580. (Id.) Plaintiff filed a response to Defendant's Notice on May 7, 2009, stating:
 "While the fire and loss of our building has obviously affected our full-time use of the property, it is still used occasionally for parking, storage and recreational purposes by the low income tenants of our transition home on the adjacent property."
(Def's Ex I-1.)
O'Rourke testified that the county relied on aerial photographs of the subject property to confirm that there were no structures on the subject property. (Def's Ex P-1, P-2.) On June 2, 2009, Defendant issued a letter stating that the additional value set forth in its Notice was added to the tax roll for tax year 2008-09. (Def's Ex G-1.) Plaintiff filed its Complaint on August 31, 2009, requesting "[r]estoration of exemption." (Ptf's Compl at 1.) *Page 4 
Werner testified that he visited the property on September 17, 2009. He described the photographs he had taken, noting the grass growing among the gravel and absence of structures. (Def's Exs Q-1, Q-2.) Werner concluded that it did not look like the subject property was used for anything. O'Rourke testified that based on Werner's photographs and the information available to her she concluded that the subject property does not meet the statutory requirement of ORS 307.130(2)(a): exclusively used for charitable purposes.
 II. ANALYSIS
Plaintiff alleges that the subject property (vacant land) qualifies for exemption from property taxation because it meets the statutory requirements of ORS 307.130(2)[1] which provides that:
 "Upon compliance with ORS 307.162, the following property owned or being purchased by * * * charitable * * * institutions shall be exempt from taxation:
 "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in * * * charitable or scientific work carried on by such institutions."
 "(b) Parking lots used for parking or any other use as long as that parking or other use is permitted without charge for no fewer than 355 days during the tax year."
When looking at statutes granting exemption, the court must remember the principle that taxation is the rule, and exemption from taxation is the exception. Dove Lewis Mem. Emer. Vet.Clinic v. Dept. of Rev., 301 Or 423, 426-27, 723 P2d 320 (1986). In its analysis, the court is guided by the rule that property tax exemption statutes are strictly but reasonably construed. SWOregon Pub. Def. Services v. Dept. of Rev.,312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving *Page 5 
due consideration to the ordinary meaning of the words of the statute and the legislative intent." North Harbour Corp. v. Dept.of Rev., 16 OTR 91, 95 (2002).
In this case, the parties agree that the subject property originally qualified for tax exemption when the destroyed structure was used as an administrative office. Property or a portion of a property shall be exempt from taxation if it is "actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions." ORS 307.130(2)(a). "[T]he words "exclusively occupied or used? * * * refer to the primary purpose for which the institution was organized and includes any property of the institution used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution." Mult. School of Bible v. Mult. Co.
(Mult. School of Bible), 218 Or 19, 36-37, 343 P2d 893 (1959). "It is the actual occupancy of the property which determines its right to exemption[.]" Id. at 40 (citing Hibernian BenevolentSociety v. Kelly, 28 Or 173, 42 P 3 (1895)).
The statute requires property to be "actually and exclusively" occupied or used. ORS 307.130(2). Pump testified that the subject property's use "has been inactive due to the unforeseen fire and loss of the building" and Plaintiff has "been diligent in re-establishing the active use." (Ptf's Ex 1.) According to Pump, it will be almost four years after the date the subject property's structure was destroyed when Plaintiff breaks ground for its new construction in July, 2010.[2] For approximately one-half of that four year period, Defendant allowed the property tax exemption. That is an extended period of time with no or limited occupancy or use. *Page 6 
As previously stated, ORS 307.130(2)(a) requires that the property be "actually and exclusively occupied or used" in the charitable work of the owner or occupant. Unfortunately for Plaintiff, there is no statutory provision allowing exemption for inactive use of property, whether the property was once granted an exemption or is seeking exemption for the first time. Plaintiff's occasional use of the property for parking does not meet the statutory use requirement of permitting parking "no fewer than 355 days during the tax year." ORS 307.130(2)(b). Plaintiff's use of the subject property for recreation was not documented, and after considering the testimony and evidence, the recreational use, if any, was minimal. The only portion of the property that is in actual and exclusive use is the portion of the subject property where the shed, which is a "facility * * * incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of" Plaintiff is located. Mult. School ofBible, 218 at 36-37. A partial exemption is granted for the 250 square feet of the subject property that is actively and exclusively occupied or used for Plaintiff's charitable purpose.
 III. CONCLUSION
After careful review of the applicable law and case law, the court concludes that a partial exemption under ORS 307.130 has been established. Now, therefore, *Page 7 
IT IS THE DECISION OF THIS COURT that a 250 square-foot portion of the subject property identified as R364493 1S213AD-00400 is entitled to a partial exemption from property taxation for tax year 2008-09.
Dated this ___ day of May 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on
 May 12, 2010. The court filed and entered this documenton May 12, 2010.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2007 version.
[2] At trial, the parties briefly discussed ORS 307.330, which in pertinent part provides that a commercial building or structure "in the process of construction on January 1" may if certain conditions are met be exempt from taxation. Because Plaintiff testified that building construction will commence in July, 2010, Plaintiff has failed to meet at least one if not more of the statutory requirements of ORS 307.330. ORS 307.330 is not applicable to the facts before the court.